## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL CENTER FOR
TECHNOLOGY ASSESSMENT, et al.,

Plaintiffs,

v.

TOM VILSACK, Secretary, United
States Department of Agriculture, et al.,

Defendants.

Civil Action 03-00020 (HHK)

### MEMORANDUM OPINION AND ORDER

Before the court is plaintiffs' motion for the attorneys' fees and costs they have incurred

in prosecuting this lawsuit brought under the Plant Protection Act ("PPA") and National

Environmental Policy Act ("NEPA") [#106]. This motion was referred to Magistrate Judge Alan

Kay for his report and recommendation pursuant to LCvR 72.3. The Magistrate Judge

recommended that plaintiffs' motion be granted and that plaintiffs be awarded $59,384.27 in

attorneys' fees and costs, which represents a portion of the amount they seek. Report and

Recommendation at 18 [#112]. Plaintiffs object to two specific aspects of the Report and

Recommendation and argue that they should be awarded $98,306.04 in attorneys' fees and costs.

Upon consideration of plaintiffs' motion, defendants' opposition, the Report and

Recommendation, plaintiffs' objection thereto, and defendants' response to plaintiffs' objection,

the court concludes that plaintiffs' objection to the Report and Recommendation has some merit,

and that plaintiffs are entitled to fees and costs in the amount of $85,141,24.

## I. BACKGROUND

Organizational plaintiffs International Center for Technology Assessment, Center for Food Safety, and Klamath Siskiyou Wildlands Center, along with five individual plaintiffs, brought an action for declaratory and injunctive relief against three government defendants, Tom Vilsack, Secretary of the Department of Agriculture, Cindy Smith, Administrator of the Animal and Plant Health Inspection Service ("APHIS"), and Alan Tasker, Program Manager of the Noxious Weeds Program, each in their official capacities.[1]  Plaintiffs alleged that APHIS acted arbitrarily and capriciously when it:  (1) denied their petition to have certain genetically engineered ("GE") varieties of grasses listed as noxious weeds under the PPA; (2) permitted a variety of field tests of GE creeping bentgrass to be conducted across the country without adequately determining whether GE creeping bentgrass was a "plant pest" pursuant to PPA implementing regulations; and (3) permitted a variety of field tests of GE creeping bentgrass to be conducted without preparing an Environmental Impact Statement or Environmental Assessment pursuant to NEPA.

The parties filed cross-motions for summary judgment; the court granted summary judgment in favor of plaintiffs on their first and third claims, vacating and remanding defendants' denial of plaintiffs' petition.  With respect to the first claim, the court held that APHIS used an improper consideration – namely, whether a plant species is "new or not known to be widely prevalent" – when it determined that GE varieties of creeping bentgrass and Kentucky bluegrass were not noxious weeds under the PPA.  As to the third claim, the court held that APHIS's

_____

[1]  Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Secretary of Agriculture Tom Vilsack has been substituted for former Secretary Mike Johanns, and Administrator of APHIS Cindy Smith has been substituted for former Administrator Bobby Accord.

failure to determine whether the field tests had the potential to significantly affect the quality of the human environment under NEPA was arbitrary and capricious.  Regarding the second claim, however, while the court expressed concern about APHIS's interpretation of its regulation (which interpretation allowed APHIS to rely on states to make the determination of whether something is a noxious weed in the area of release instead of requiring APHIS to perform an independent evaluation), it held that APHIS's interpretation was not plainly erroneous.

Having prevailed on the merits of their first and third claims, plaintiffs moved for an award of attorneys' fees and costs under the Equal Access to Justice Act.  The court referred the motion to Magistrate Judge Alan Kay for his report and recommendation pursuant to LCvR 72.3. Applying the Equal Access to Justice Act, which provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified," 28 U.S.C. § 2412(d)(1)(A), Magistrate Judge Kay concluded that the government's position was not substantially justified with respect to plaintiffs' first and third claims; therefore, the Magistrate Judge recommended that plaintiffs be awarded fees and other expenses.  Report and Recommendation at 8.  The Magistrate Judge then calculated the lodestar, which is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate, and determined that, prior to any adjustments, plaintiffs should be awarded $87,765.33 in attorneys' fees and $1,311.08 in costs. *Id*. at 8-13.

The Magistrate Judge then turned to defendants' arguments that there were grounds for reducing the lodestar, and found that some of defendants' arguments had merit.  Following Supreme Court precedent, the Magistrate Judge considered "the important factor of 'results

obtained.'" *Id.* at 13 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). *Hensley* held that

if "a plaintiff has achieved only partial or limited success," on a claim that is unrelated to the

claims on which he succeeded, the lodestar figure may be an excessive amount, and the court

may "reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

Concluding that plaintiffs' second and third claims "alleged violations of different regulations

and statutes," the Magistrate Judge concluded that plaintiffs' second claim was not related to

their first and third claims and therefore plaintiffs' award should be reduced. Report and

Recommendation at 16. The Magistrate Judge recommended a reduction of one-third to account

for plaintiffs' limited success. He acknowledged that the Supreme Court had rejected "a

mathematical approach to comparing the total number of issues in the case with those actually

prevailed upon," but concluded that a more nuanced approach was not realistic in this case as

plaintiffs had not recorded the time they spent by claim. Report and Recommendation at 16

(citing *Hensley*, 461 U.S. at 435 n.11). Finally, the Magistrate Judge concluded that defendants'

argument that the fee should also be reduced to reflect plaintiffs' failure to obtain injunctive

relief did not have merit.

## II.  ANALYSIS

Plaintiffs object to the Magistrate Judge's Report and Recommendation for two reasons.

First, they argue that the Magistrate Judge should not have reduced their fees because they did

not prevail on one of their claims as that claim was indeed related to the others. Second,

plaintiffs argue that even if the Magistrate Judge was correct to reduce their fees to reflect their

lack of success on one claim, the one-third reduction was excessive because the docket and

briefing show that plaintiffs did not devote one-third of their time to this claim.  The court will address each argument in turn.

The Supreme Court has held that where a plaintiff succeeds on only some of his claims, "two critical questions must be addressed.  First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.  The Court went on to explain that in some cases "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" and that in such a case the work on one claim will be unrelated to the work on the others, and so the work on the unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result.  *Id*. at 434-35.  Where plaintiffs' claims for relief involve "a common core of facts or will be based on related legal theories," however, much of counsel's time "will be devoted generally to the litigation as a whole" and the focus should be on the significance of the overall relief obtained.  *Id*.  Thus, the critical question is whether the claims are related.  The Court of Appeals for the District of Columbia has held that where "[e]ach issue involves a particular substantive concern of the petitioners with a particular aspect of [an agency's] regulations," and "different policy rationales and statutory provisions set forth by the agency" support the agency's decision on those issues, the claims are legally distinct.  *Sierra Club v. EPA*, 769 F.2d 796, 803 (D.C. Cir. 1985); *see also Kennecott Corp. v. EPA*, 804 F.2d 763, 765 (D.C. Cir. 1986).

Citing *Sierra Club*, the Magistrate Judge concluded that plaintiffs' claims were not related.  In their objection, plaintiffs argue that the Magistrate Judge ignored the similarity in the factual basis of their second and third claims.  Both claims, according to plaintiffs, stem from the same common core of facts, "that the [U.S. Department of Agriculture] APHIS arbitrarily and capriciously approved the field tests of [GE creeping bentgrass] because it ignored the potential environmental risks of [GE creeping bentgrass], including and specifically the potential weediness of [GE creeping bentgrass]."  Pls.' Obj. to Rep. and Rec. at 5.  Defendants rejoin that plaintiffs' second and third claims involve a particular substantive concern with a particular agency action and involve different statutes and regulations, and therefore plaintiffs cannot distinguish *Sierra Club*.  Defendants are correct.

The court concludes that *Sierra Club* dictates the result in this case.  In *Sierra Club*, environmentalists had sought review of two EPA regulations regarding how emissions limitations for sources of pollution would be calculated.  *Sierra Club*, 769 F.2d at 802. Responding to concerns that sources of pollution were merely increasing the height of their stacks to meet air quality standards, Congress mandated that emissions limitations be calculated as if the stacks were no higher than that height dictated by good engineering practices.  *Id*. Environmentalists challenged two of the three methods by which the EPA proposed to calculate stack height, including challenging the fact that the EPA's formula did not take into account plume rise (the tendency of air propelled upwards to continue rising) and the fact that the EPA's formula allowed sites to calculate the stack height as though there were nearby terrain obstacles that would cause plume impaction (i.e., would cause pollution to collect) even when there were not.  The Court of Appeals held that the EPA was arbitrary and capricious with respect to plume

6

impaction, but was not arbitrary and capricious with respect to plume rise.  *Id*. at 804-5.  In

determining that plaintiffs in that case should be awarded attorneys' fees for their work on the

plume impaction issue, but not the plume rise issue, the court necessarily concluded that these

two claims were unrelated.  *Id*. at 804.  This court cannot discern how plaintiffs' second and third

claims in the instant case, which involve different statutes and different policy rationales, are

more related than the claims in *Sierra Club*.  Therefore, the court adopts the Magistrate Judge's

recommendation that plaintiffs' fee award should be reduced due to lack of success on their

second claim.

Turning to the amount of the reduction, however, the court concludes that the amount

recommended by the Magistrate Judge is too great.  The rationale for reducing the fee is that

plaintiffs' should not be compensated for their work on an unsuccessful claim.  The Magistrate

Judge recommended that plaintiffs' fee should be reduced by one-third because plaintiffs did not

prevail on one-third of their claims.  While acknowledging that the Supreme Court has rejected

"a mathematical approach comparing the total number of issues in the case with those actually

prevailed upon," the Magistrate Judge concluded that a more nuanced approach was not realistic

in this case because plaintiffs did not keep their time records by claim.  Report and

Recommendation at 16 (citing *Hensley*, 461 U.S. at 435 n.11).

Plaintiffs object, arguing that the court may take a more nuanced approach by examining

the docket and briefing record, which support the conclusion that they spent less than one-third

of their time on their second claim.  Plaintiffs argue that the docket shows that they spent many

hours working on issues beyond the scope of their claims (including defending standing), and

that far less than one-third of the pages in their briefing were devoted exclusively to their second

claim.  APHIS rejoins that plaintiffs' time records do not indicate how their attorneys' time was broken down, and that where this is the case courts have used a proportional reduction.  APHIS argues that plaintiffs' approach would place a disproportionate burden on both the court and defendants to rectify plaintiffs' own shortcoming.

The Supreme Court has indicated that district courts have considerable discretion in determining a fee award, stating:  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment."  *Hensley*, 461 U.S. at 437.  Based on this court's experience with this case, it concludes that a reduction of one-third to account for the time plaintiffs spent on their unsuccessful second claim is excessive.  Plaintiffs spent a good deal of time defending standing and working on other issues not directed to any of the three claims specifically, but which was necessary to plaintiffs' successes on their first and third claims.[2]  Therefore, the court concludes that it is more appropriate to reduce plaintiffs' fee by fifteen percent to reflect the effort they expended on their unsuccessful second claim.  This results in an award of $74, 600.53 in attorneys' fees and $1,311.08 in costs.

Plaintiffs further seek reasonable fees for the hours expended working on their objections and reply to defendants' response to their objections in the amount of $9,229.63.  Defendants do not respond to this request.  The court concludes that work performed in connection with

---

[2]  The court notes that plaintiffs requested $23,295.43 for their work on their motion for attorneys' fees, Pl.'s Mot. for Atty's Fees at 22, a request that the Magistrate Judge concluded had merit and included in the lodestar, Report and Recommendation at 11.  None of the time plaintiffs spent preparing their motion for attorneys fees, of course, was devoted to arguing the merits of plaintiffs' second claim.

objecting to the Magistrate Judge's Report and Recommendation, like work performed in connection with a motion for award of attorneys' fees and costs is compensable.  *See Sierra Club*, 769 F.2d at 811 (noting that hours reasonably expended in preparing a fee petition are compensable); *see also, e.g.*, *Coleman v. District of Columbia*, 2007 WL 1307834, at *2-3 (D.D.C. May 3, 2007) (awarding "fees on fees").  Plaintiffs' assertion of the amount of time spent on the objections is well-documented and reasonable.  Therefore, the court awards an additional $9,229.63 in attorneys' fees for the preparation of plaintiffs' objections and reply to defendants' response to plaintiffs' objections.

### III.  CONCLUSION

For the foregoing reasons, it is this 18th day of March 2009, hereby

**ORDERED** that plaintiffs' motion for attorneys' fees and costs is GRANTED in the amount of $83,830.16 in attorneys' fees and $1,311.08 in costs.

Henry H. Kennedy, Jr.
United States District Judge